**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 23-CR-80211-MARRA/MCCABE**

**UNITED STATES OF AMERICA,**

    **v.**

**ROBERT LEON SMITH III,**

        **Defendant.**

_____/

## UNITED STATES' MOTION TO APPOINT STANDBY COUNSEL AND FOR *FARETTA* HEARING

The United States of America, through the undersigned counsel, hereby files this Motion to Appoint Standby Counsel and for *Faretta* Hearing. Defendant Robert Leon Smith III ("Defendant") is proceeding *pro se* in this matter and has repeatedly failed to either acknowledge or comply with the rules of this Court. The United States has serious concerns about the Defendant's conduct and the prospect of a disorderly trial. Thus far, the Defendant has filed a series of frivolous pleadings and consistently made frivolous statements in court. He appears to have made no attempt to acknowledge or abide by the Federal Rules of Criminal Procedure, Federal Rules of Evidence, or rules of this Court, instead grounding his filings and arguments in rules and scripts known only to himself and possibly others who share his anti-Government views.

For the reasons further discussed below, the United States respectfully submits that the Court, in its discretion, has the power to appoint and compensate standby counsel over any objection from the Defendant and should hold another *Faretta* hearing to, among other things described below, appoint standby counsel. A proposed order is enclosed with this motion.

1

**BACKGROUND**

Defendant stands accused of conspiring to submit over $60 million in false and fraudulent claims to Medicare, of which Medicare paid over $30 million. (Indictment, ECF No. 1, at 17). On December 13, 2023, the Defendant was charged by indictment with conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349; five counts of health care fraud, in violation of 18 U.S.C. § 1347; conspiracy to defraud the United States and to pay and receive health care kickbacks, in violation of 18 U.S.C. § 371; and two counts of solicitation and receipt of kickbacks in connection with a federal health care program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A). (Indictment, ECF No. 1).

On January 10, 2024, Attorney David Haas filed a notice of appearance on behalf of the Defendant. (ECF No. 12). That day, Attorney Haas, together with Attorney Brian Rafferty, filed a motion to admit Attorney Rafferty *pro hac vice* to appear as co-counsel on behalf of the Defendant in this case. (ECF No. 13). The Court granted the motion. (ECF No. 14).

On March 8, 2024, the Defendant began submitting *pro se* filings. (*See, e.g.*, ECF Nos. 25–27). On March 11, 2024, the Court issued an order reminding the Defendant he is represented by counsel and should not file items on the docket himself. (ECF No. 28). Nevertheless, the Defendant continued submitting *pro se* filings. (ECF Nos. 29–30). On April 8, 2024, the Court conducted a status conference to address the status of Defendant's representation. (ECF No. 34). At the conclusion of the conference, Defendant advised the Court that he wished to continue to be represented by Attorneys Haas and Rafferty. Following the hearing, however, the Defendant continued to submit *pro se* filings, (*see, e.g.*, ECF Nos. 36–42), prompting his attorneys to file a motion to be relieved as counsel for the Defendant, (ECF No. 43). On May 16, 2024, the Court held a *Faretta* hearing at which the Defendant knowingly and voluntarily waived his right to

counsel. (ECF No. 53). The Court granted Attorneys Haas and Rafferty's motion to be relieved as counsel but, with the Defendant's consent, ordered that Attorney Rafferty continue to participate in the case as standby counsel. (ECF No. 54). The Court later clarified this order as follows:

> Mr. Rafferty's responsibilities as standby counsel will include, and be limited only to, the following:
>
> > (1) being available to explain the rules and procedures to Defendant as necessary and applicable,
> >
> > (2) accepting discovery productions from the Government on behalf of the Defendant and making those discovery productions available to Defendant pursuant to the Protective Order [ECF. No. 21],
> >
> > (3) interfacing with the Government's Filter Team on behalf of the Defendant and assisting the Defendant with preparation of a privilege log, if one is necessary, and
> >
> > (4) assisting the Defendant with preparing proposed jury instructions.

(ECF No. 88).

On August 5, 2024, the Defendant filed a notice of his intention to terminate Attorney Rafferty as standby counsel. (ECF No. 96). In addition, the notice suggested a possible conflict: "Brian Rafferty was the lead counsel advising the defensibility and legality of the Durable Medical Equipment companies' relationship with the Federal Medicare Program—which precipitated this case and led to the Indictment naming me—and that we had a working relationship in this capacity between the years 2020 and 2022." (*Id.*). In response, the Court held a status conference, at which Attorney Rafferty stated, "Mr. Smith has made very clear that, you know, he no longer wants my services as standby counsel. He has filed several documents in which he's made that clear [he is] firing me." (ECF No. 187 at 6:25 to 7:3). Attorney Rafferty also stated, "If the Court wants to hear from me, as I said, about the conflict issue that Mr. Smith has also raised, I would . . . just ask that that be done outside the presence of the government." (*Id.* at 10:15-18). The Court stated it would

issue an order relieving Attorney Rafferty of his duties as standby counsel and that there was no need to inquire further about a potential conflict. (*See id.* at 12:13-15). Later in the hearing, following a lengthy back-and-forth between the Defendant and the Court, Judge McCabe stated, "I think, again, at this point I feel like you're kind of asking me to give you legal advice and – I really can't do that." (*Id.* at 31:1-4). Following another back-and-forth, Judge McCabe stated, I can't go on any further. I really can't go on any further and give you legal advice or to answer your questions." (*Id.* at 32:22-24).

Before the hearing concluded, counsel for the United States asked, "I'm not sure what to say to all that, but I just want to, you know, clarify. So Mr. Smith is not going to have standby counsel at all in this case?" (*Id.* at 33:7-10). The Court clarified, "Correct. He's off entirely." (*Id.* at 33:11). Counsel then stated the United States' position that, "closer to trial it may be necessary to revisit that in case there would be any specific things he would need standby counsel for at trial." (*Id.* at 33:14-16). The Court replied:

> I understand. And you may want to file an appropriate motion when you believe the time is right to do so. . . . I don't know that – you know, I don't know. You'd have to show me the case law. If someone doesn't want standby counsel, what's my power to force them to take it especially if they're not indigent. I'm not – you know, is the Court going to pay for someone to be a standby counsel. So you would have to show me the law about that.

(*Id.* at 33:20 to 34:3). Following the hearing, the Court issued an order relieving Attorney Rafferty of his role as standby counsel, and his role as standby counsel was terminated. (ECF No. 100).

According to undersigned counsel's calculations, as of the date of this Motion, the Defendant had filed the following documents that are grounded in the Defendant's anti-government, "sovereign citizen" ideology and are largely frivolous in the context of the Federal Rules of Criminal Procedure:

| Title | Total |
|-------|-------|
| Non-Negotiable Notice of Acceptance | 50 |
| Non-Negotiable Notice of Inquiry | 16 |
| Notice of and Rescission | 16 |
| Notice of Dishonor | 8 |
| Certificate of Dishonor | 6 |
| Challenge to Standing | 6 |
| Notice of and Repentance of Sins for Cause | 4 |
| Notice of Default and Opportunity to Cure | 3 |
| Notice of Lis Pendens | 3 |
| Non-Negotiable Notice of Compelled Performance | 2 |
| Non-Negotiable Notice of Special Appearance and of Explicit Reservation of All Rights Without Prejudice | 2 |
| Conspiracy to Threaten, Coerce, Injure, and Intimidate in the Free Exercise of Rights under Color of Law | 1 |
| Sale Into Involuntary Servitude | 1 |
| False and Fictitious Records | 1 |
| War Crimes | 1 |
| Violating Rights and Immunities under Color of Law | 1 |
| Attempted Murder | 1 |
| Notice of and Rescission of Form 855S for Cause | 1 |

At each status conference, the Defendant has advanced frivolous questions and assertions, derailing the proceedings into confusing and often circular exchanges. These exchanges have devolved into the Court explaining rules of procedure, attempting to answer the Defendant's frivolous questions, and eventually announcing the need to move on. For example, during the October 15, 2024, status conference, after the Defendant's raised a familiar refrain that his criminal case is a "commercial matter" in which his bond had a "CUSIP number," the Court interjected, "Excuse me, Mr. Smith. That is all nonsense, and I don't want to even go into it anymore. This is not a commercial matter." (ECF No. 189 at 9:12-13). When the Defendant derailed the hearing by repeatedly asking frivolous questions such as, "Judge, does the Court's record reflect that the prosecution and the clerk are in possession of the discharge instrument which I have issued in good

faith and for them to evade the discharge in this matter that they are in extreme dishonor," (*id.* at 13:22 to 14:1; *see id.* at 2:24 to 3:2, 3:9-13, 4:8-10, 5:24 to 6:9, 7:7-13, 8:9-12), the Court said, "I have no idea what you just said, Mr. Smith. So we are wasting our time," (*id.* at 14:9-10). The Defendant then returned to his script about his bond having a CUSIP number, at which point the Court said it had not "understood anything of what you said in the last 30 seconds" or, in fact, "everything that you said since we got into this hearing[.]" (*Id.* at 18:23 to 19:3). Finally, after more frivolous outbursts from the Defendant, the Court concluded:

> I don't know what you are talking about, Mr. Smith. So we are going to end the hearing. I have told you repeatedly I don't understand what you are saying. I don't know what you mean by the 'discharge documents are in our possession.' I have no understanding what that means, and I am – you know, we are going in circles. We are repeating ourselves. . . . I've done what I intended to do, and we are going to end this hearing now.

(*Id.* at 24:9-21).

This pattern continued during the hearing on December 10, 2024. After the Defendant's first soliloquy, the Court responded,

> Mr. Smith, this is one of the reasons why I urge you to get a lawyer, because you make arguments and assertions that, from my experience, don't make any legal sense in the context of this case. And so I don't know what that means. I don't know what your statements mean. And, again, that's why I am having difficulty with your decision to not have an attorney represent you. So I don't know what your statement or request to me really is asking other than it doesn't make any legal sense to me.

(ECF No. 190 at 5:12-22). After several additional such sequences, counsel for the United States interjected:

> Your Honor, I'd like to raise a few points for the government because we have been through these arguments many times. I think that this hearing is like the other ones we have had, makes clear the need for standby counsel in this case. The government is looking into this issue to see if we could present it in a motion to the court, just the authority for the court to appoint standby counsel in this case, and assuming that the court does have that authority, which we believe the court does, we are going to file a motion to that effect.

(*Id.* at 22:7-17). The Defendant then stated, "I reject the government's motion that I should have some sort of standby counsel." (*Id.* at 23:15-16).

Trial in this case is scheduled to commence on March 24, 2025. (ECF No. 24).

## ARGUMENT

**I.**   **THIS COURT CAN AND SHOULD APPOINT STANDBY COUNSEL REGARDLESS OF ANY OBJECTION BY THE DEFENDANT**

A criminal defendant has "a constitutional right to conduct his own defense." *Faretta v. California*, 422 U.S. 806, 836 (1975). This right, however, "is not a license to abuse the dignity of the courtroom." *Id.* at 834 n.46. "Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id.* Thus, a trial court "may—***even over objection by the accused***—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* (emphasis added); *see McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) (holding *Faretta* rights are not infringed "when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure" or "when standby counsel assists the *pro se* defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete"); *Betts v. Brady*, 316 U.S. 455, 471–72 (1942) ("Every court has power, if it deems proper, to appoint counsel where that course seems to be required in the interest of fairness.").

The appointment of standby counsel "relieve[s] the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle*, 465 U.S. at 184. In this way, standby counsel furthers the court's own interest "in the fair, speedy

and efficient disposition of cases on its criminal docket." *United States v. Bertoli*, 994 F.2d 1002, 1017 (3d Cir. 1993) (holding that law firm could be ordered to remain as standby counsel to *pro se* defendant).

The Supreme Court has held that the appointment of standby counsel is consistent with a defendant's *Faretta* rights as long as standby counsel is not permitted, "over the defendant's objection," to "make or substantially interfere with any significant tactical decisions, or control the questioning of witnesses, or to speak instead of the defendant on any matter of importance." *McKaskle*, 465 U.S. at 178–79. In addition, "participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *Id.; see also Barnes v. Sec'y, Dep't of Corr.*, 888 F.3d 1148, 1159 (11th Cir. 2018) ("[T]he participation of standby counsel, even over the objection of a *pro se* defendant, is consistent with *Faretta* as long as counsel does not seriously interfere with the defendant's opportunity to present his own case or undermine the jury's perception that the defendant is representing himself." (citing *Faretta* and *McKaskle*)).

Consistent with these rulings, district courts have regularly appointed standby counsel to assist *pro se* defendants, even where defendants claim to be "sovereign citizens" and regardless of the defendants' positions on the matter. *See, e.g.*, *United States v. Hill*, No. 3:08-cr-00734, ECF No. 62 (Minute Entry), (D.S.C. Oct. 21, 2008) (granting government's motion to appoint standby counsel where defendant filed sovereign citizen-type pleadings in that case as ECF No. 48-1); *United States v. Cork*, No. 1:07-CR-183-WSD, 2007 WL 3005338, at *1 (N.D. Ga. Oct. 12, 2007) (granting government's motion to appoint standby counsel and noting, "[b]etween this case and a prior case against him, Mr. Cork has been represented by seven standby attorneys"); *see also United States v. Cobble*, No. 5:14-CR-77, 2018 WL 4283063, at *1 (M.D. Ga. Aug. 30, 2018),

*aff'd*, 779 F. App'x 698 (11th Cir. 2019) (noting defendant had filed "twenty-nine motions present[ing] patently frivolous 'sovereign citizen' legal theories, determining "[d]efendant's deficient self-representation has impaired the orderly disposition of this case and jeopardized his right to a fair trial," and ordering "appointed standby counsel, [], to act as active counsel for Defendant for all pretrial matters").

In this case, the United States respectfully submits that the Court can and should appoint standby counsel. *Faretta* itself articulates the Court's authority to appoint standby counsel, even over the Defendant's objection. *Faretta*, 422 U.S. at 834 n.46. The availability of standby counsel will promote the Court's interests in the integrity of this proceeding and the orderly resolution of this case. Standby counsel can serve as a legal advisor if the Defendant so desires and can be prepared to step in to try the case if necessary. Even if the Defendant decides not to consult with standby counsel, it is in the interests of the Defendant and this Court to ensure the appropriate resources are available to allow the Defendant to prepare for and present his defense in this action.

## II.   THE COURT MAY COMPENSATE STANDBY COUNSEL AS LONG AS STANDBY COUNSEL DOES NOT REPRESENT THE DEFENDANT

Pursuant to a policy promulgated by the Judicial Conference of the United States, district courts may compensate standby counsel based on Criminal Justice Act ("CJA") rates, regardless of a defendant's ability to pay, as long as standby counsel does not represent the defendant:

> (a) In circumstances in which standby counsel is appointed under the court's inherent authority, and counsel serves exclusively on behalf of the court to protect the integrity and continuity of the proceedings, and does not represent the defendant, any compensation to be paid counsel must be in the capacity of an "expert or consultant" under 5 U.S.C. § 3109.

> (b) Therefore, an appointment under this section may be made regardless of whether the defendant is financially able to obtain adequate representation. In such cases, compensation will be determined by the judicial officer according to CJA hourly rates and case compensation maximums.

(c) The Administrative Office of the U.S. Courts' (AO) Defender Services Office should be consulted regarding appointment and payment procedures. If, during the course of the proceedings, a pro se defendant who is financially able to retain counsel elects to do so, the court's appointment of an attorney under 18 U.S.C. § 3006A(c) may be terminated.

Judiciary Policies § 220.55.30 ("Standby Counsel Appointed Under the Court's Inherent Authority"). This policy is consistent with the Supreme Court's longstanding recognition of the power of federal courts "to provide themselves with appropriate instruments required for the performance of their duties." *Ex Parte Peterson*, 253 U.S. 300, 312 (1919).

Indeed, district courts across the country have appointed standby counsel where defendants have not qualified for appointed counsel under the CJA, and the Court may do so in this case. *See United States v. Brugnara*, No. CR 14-00306 WHA, 2015 WL 1518036, at *4 (N.D. Cal. Apr. 2, 2015), *aff'd*, 856 F.3d 1198 (9th Cir. 2017) ("Attorney Tamor will be appointed and compensated pursuant to the Court's inherent authority as an expert consultant under 5 U.S.C. Section 3109, and not under the Criminal Justice Act. Attorney Tamor will therefore serve exclusively on behalf of the Court to protect the integrity and continuity of proceedings and again does not represent defendant."); *United States v. Siegrist*, No. 1:13-cr-62, 2013 WL 11320221, at *2 (D.N.D. June 19, 2013) ("[T]he Court appoints standby counsel who will serve exclusively on behalf of the Court to protect the integrity and continuity of the proceedings."); *United States v. Kuyrkendall*, No. CRIM. 3:09CR18DPJJCS, 2009 WL 2449015, at *3 (S.D. Miss. Aug. 7, 2009) ("[T]he Court believes that standby counsel is necessary. Therefore, the Court appoints the Federal Public Defender to serve in that capacity. Said counsel will serve exclusively on behalf of the Court to protect the integrity and continuity of the proceedings and will not represent the Defendant.").

### III.   THE COURT SHOULD HOLD ANOTHER *FARETTA* HEARING AT WHICH IT APPOINTS STANDBY COUNSEL

So far, the Defendant in this case has been following the "sovereign citizen" playbook rather the Federal Rules of Criminal Procedure, Federal Rules of Evidence, and rules of the Court. The United States is concerned about the possibility, however remote, that the Defendant might fail to come into compliance with the rules, even with the benefit of standby counsel, and that standby counsel might end up being appointed to represent the Defendant. *See Faretta*, 422 U.S. at 834 n.46 (explaining one role of standby counsel is "to represent the accused in the event that termination of the defendant's self-representation is necessary"); *Cobble*, 2018 WL 4283063, at *1 (ordering "appointed standby counsel, [], to act as active counsel for Defendant for all pretrial matters").

The hypothetical scenario of a defendant's self-representation being terminated is not often presented in federal court, and undersigned counsel has found no statute or rule governing who should bear the costs of appointed counsel for the Defendant if such a scenario were to arise in this case. The Court may not compensate standby counsel as an "expert or consultant" if standby counsel ends up "represent[ing] the Defendant." Judiciary Policies § 220.55.30(a). As summarized below, however, courts facing similar circumstances have exercised their discretion to order either that the defendant or the appointed attorney must compensate appointed counsel. The Court should explain to the Defendant and appointed standby counsel that either such outcome is possible here. The Court's guidance on this issue is significant because it could impact the Defendant's decision about whether to continue to represent himself and/or whether to select his own standby counsel at his own expense. Accordingly, the United States asks the Court to hold another *Faretta* hearing to conduct another searching inquiry of the Defendant's decision to proceed *pro se* and to provide

clear guidance to both the Defendant and the appointed standby counsel, as further discussed below.

At least one court of appeals, the Third Circuit, affirmed the district court's discretion to require appointed counsel to bear the costs of serving as standby counsel where the district court expressed concern about the possibility that the defendant might "revoke[] his election to proceed *pro se* or become[] unable to proceed *pro se*." *Bertoli*, 994 F.2d at 1009 (quoting district court order). There, the district court ordered that "an attorney who has entered a general appearance in a criminal case" was required "to provide standby services for a former client who is not indigent and elects to proceed *pro se*." *Bertoli*, 994 F.2d at 1016. In affirming this decision, the Third Circuit reasoned that "an attorney who has entered an appearance for a criminal defendant has a duty to continue in a standby role not only to his former client but also to the court itself." *Id.* The case did "not involve a situation where counsel [wa]s a stranger to the litigation and [wa]s appointed initially to act as standby counsel." *Id.* Rather, the court emphasized it "impose[d] a continuing obligation on retained counsel—not a new and independent duty." *Id.* The Third Circuit provided guidance that district courts, in exercising their discretion to require [attorneys to provide] such services [without compensation]," should "balance appropriately their own interests in the expeditious administration of their criminal dockets with the needs of the defendant, his or her co-defendants and the burden on the attorney or firm involved." *Id.* at 1023.

Alternatively, at least one federal court has instead required a defendant to bear the costs of appointed counsel. In *United States v. Rivera,* the court ordered that if a corporate defendant did not retain counsel, then the court would choose an attorney for the defendant and require the defendant to pay the attorney's fees, costs, and expenses. *Rivera,* 912 F. Supp. 634, 635–37 (D.P.R. 1996). The Court exercised its discretion to issue such an order after finding there was no statute

12

addressing the appointment of counsel for corporate defendants. *Id.* ("§ 3006A provides for the appointment of counsel and payment of legal representation on behalf of 'persons' [but] not . . . corporate defendants."). The *Rivera* court made clear, that any such appointment would "*not* be made under the Criminal Justice Act." *Id.* at 635. This ruling was consistent with the "traditional American Rule" in which criminal defendants "bear the costs of their criminal defenses." *United States v. Certain Real Prop.*, 579 F.3d 1315, 1322 (11th Cir. 2009).

The United States submits that the appointment of standby counsel should take place during another *Faretta* hearing. At the hearing, the Court should first address the Defendant to (1) conduct another searching inquiry to confirm the Defendant's decision to proceed *pro se* is knowing and voluntary; (2) admonish the Defendant that he, as with any party appearing before the Court, will be held to abide by the Federal Rules of Criminal Procedure, Federal Rules of Evidence, and rules of this Court; (3) explain to the Defendant that he could lose his opportunity to proceed *pro se* for disregarding the rules or disrupting trial proceedings; and (4) invite the Defendant to hire his own standby counsel if he wishes to have input on who serves in that role. *See United States v. Enmon*, 686 F. App'x 769, 776 (11th Cir. 2017) (finding defendant knowingly and voluntarily waived right to counsel based on warnings given by the trial court at "three separate *Faretta* hearings").

Next, the Court should appoint standby counsel. Unless the Defendant elects to hire his own standby counsel, the Court should appoint one. Attorney Haas may be the most appropriate choice because he has entered an appearance in this case on behalf of the Defendant, is familiar with the Defendant and this case, and could be required, if necessary and in the Court's discretion, to serve as appointed counsel for the Defendant. *See Bertoli*, 994 F.2d at 1017; *Cobble*, 2018 WL 4283063, at *1; *see also Powell v. Alabama*, 287 U.S. 45, 73 (1932) ("[A]ttorneys are officers of the court, and are bound to render service when required by such an appointment."). Attorney Haas

13

should be required to appear at the hearing. If the Court deems him unsuitable for any reason, the Court should next consider appointing an attorney from the CJA panel. The Court also should clarify that standby counsel's appointment is not under the CJA and is instead "in the capacity of an 'expert or consultant' under 5 U.S.C. § 3109." Judiciary Policies § 220.55.30(a).

Finally, the Court should provide guidance about the proper role of standby counsel and warn both the Defendant and the appointed standby counsel that either of them could become responsible for the fees and costs of appointed counsel if the Defendant's self-representation were to be terminated.

## CONCLUSION

The Court should hold another *Faretta* hearing at which it appoints standby counsel.

Dated: January 6, 2025

> Respectfully submitted,
>
> MARKENZY LAPOINTE
> UNITED STATES ATTORNEY
>
> GLENN S. LEON
> U.S. DEPARTMENT OF JUSTICE
> CRIMINAL DIVISION, FRAUD SECTION
>
> By:   /s/ Owen Dunn
> Andrea Savdie, Bar No. A5502799
> Michael McCarthy, Bar No. A5503274
> Owen Dunn, Bar No. A5503217
> Trial Attorneys
> U.S. Department of Justice
> Criminal Division, Fraud Section
> 1400 New York Avenue, NW
> Washington, D.C. 20005
> Phone: (202) 993-4824
> ralf.owen.dunn@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2025, I served and filed the foregoing document with the Clerk of the Court via CM/ECF.


By:     /s/ Owen Dunn
        Owen Dunn
        Trial Attorney
        U.S. Department of Justice